```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL DELEHANTY and
CATHERINE DELEHANTY,
                                            MEMORANDUM AND ORDER
                    Plaintiffs,             07-CV-2047 (JS)(AKT)

          -against-

KLI, INC., formerly known as
Keller Industries, Inc. also
known as KLI, Global Inc.,
and THE HOME DEPOT, INC.

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiffs:     Richard M. Bronstein, Esq.
                    115 Carleton Avenue
                    Central Islip, NY 11722

For Defendants:     David M. Pollack, Esq.
                    Lewis Brisbois Bisgaard & Smith LLP
                    199 Water Street, 25th Floor
                    New York, NY 10038

                    James A. Cardenas, Esq.
                    Hardin, Kundla, McKeon & Poletto
                    110 William Street, 25th Floor
                    New York, NY 10038

                    Paul V. Kaulas, Esq.
                    McVey & Parsky, LLC
                    30 North LaSalle Street, Suite 2100
                    Chicago, IL 60602
```

SEYBERT, District Judge:

Pending before the Court is Defendants' motion for summary judgment. For the reasons that follow, the Court GRANTS summary judgment for both Defendants.

BACKGROUND[1]

Somewhere in the years 1996 or 1997, Plaintiff Mr. Michael Delehanty ("Mr. Delehanty") purchased a 24-foot-fiberglass-extension ladder manufactured by KLI from a local Home Depot. (Defs' 56.1 Stmt ¶ 3.) Several years after its purchase, on October 26, 2006, Mr. Delehanty was using the ladder to paint the rear of his home. Mr. Delehanty set up the ladder with its feet resting on his deck and its top resting against the side of his house. Suddenly, after ascending the ladder, Mr. Delehanty felt a "jolt," the ladder collapsed, and Mr. Delehanty fell onto his patio. As a result, he suffered injuries to his hip and wrist/arm. (Id. ¶¶ 1, 35.) Mr. Delehanty has testified that he does not know why the accident occurred and there were no witnesses. He had used the same ladder to seal/paint his home three and a half times from the ladder's purchase until his fall, and last used it without incident two weeks before his fall. He never had a problem with the ladder until his fall, and he knew how to set up the ladder properly before using it. (Id. ¶¶ 6, 11-24.)

The ladder has two foot pads that help prevent it from slipping while in use. Each foot pad is attached to a foot pad housing, which is bolted to the ladder. Each foot pad housing has

---

[1] The facts contained herein are taken from the parties' Local Rule 56.1 Statements. The Court notes that Plaintiff only submitted a 56.1 Counter-Statement opposing Hartford's 56.1 Statement, and not one opposing Griffon's.

two slots which run perpendicular to the rubber pad at the bottom of the foot pad housing. When the ladder feet are operating properly, the foot pad housings move axially (i.e., clockwise and counter clockwise) using the bolts as a pivot point. The housings are also capable of moving the length of the slots. (Id. ¶ 26.)

Sometime after the accident, Plaintiffs retained counsel. Plaintiffs' counsel sought out Mr. Stanley Fein, an engineer ("Fein") to determine the cause of the accident. Approximately three or four months after the accident occurred, Fein inspected the ladder. Based on this inspection, Plaintiffs' asserted product liability claims based on the theories of design defect, failure to warn, and breach of implied warranty. Plaintiffs' theories center on the bolt in the right foot pad housing ("Bolt"). Fein theorizes that the collapse could have been caused as follows: 1) If the Bolt was rusted and frozen, it may not have allowed the ladder foot housing to adjust properly. 2) The jolt felt by Mr. Delehanty may have been the Bolt slipping to the bottom of the housing under Mr. Delehanty's weight. 3) The sudden shift of the Bolt, caused the ladder to shift and Mr. Delehanty to fall. To prevent rust from forming on the Bolt, Mr. Fein testified that the Bolt should have been made from cast aluminum or stainless steel, and that failure to make the Bolt from the described materials is a design defect. Fein also states that Defendants should have warned purchasers that the ladder should be stored in a dry location, so as to prevent the

3

Bolt from rusting; without the warning, Fein theorizes, the Bolt could cause a dangerous condition.

Defendants do not offer their own theory,[2] but point out that Mr. Fein's opinion is based solely on conjecture. Because Fein did not inspect the ladder until January 29, 2007, approximately three months after the accident, there is no evidence that rust existed on the Bolt at the time of the accident, let alone that it was so rusty that it could cause the foot housing to seize. Fein did not perform any tests or calculations to determine whether the Bolt contained rust on the date of the accident which might have prevented the housing from operating correctly. Moreover, Fein did not perform any tests or calculations to determine whether the hypothetically rusted Bolt could give way under Mr. Delehanty's weight and cause the ladder to slide out or collapse. Finally, Mr. Fein testified that his theory of defect and the theory of causation between the Bolt and the ladder sliding out could not be reproduced by engineering methodology.[3] In short,

---

[2] Defendants suggest in their 56.1 Statement that the ladder may have slipped out due to a slippery deck surface on which the ladder was standing at the time of the accident, but do not elaborate. (Defs.' R. 56.1 Stmt. ¶¶ 38-41 (citing Fein Dep. 32-34).

[3] In a letter dated August 5, 2008, Plaintiffs characterize Defendants' application for a pre-summary judgment motion conference as an attempt to prevent their expert from testifying by challenging Mr. Fein's testing "in the nature of a Frye/Daubert application." On the contrary, Defendants are simply stating that Plaintiffs have not established a prima facie case because they have not provided sufficient evidence regarding

4

Plaintiffs offer no evidence that rust existed on the Bolt at the time of the accident, that the claimed rust caused the Bolt to freeze and prevent the foot housing from working properly, that the Bolt suddenly gave way, or that these circumstances caused the ladder to slide out or collapse.

On April 2, 2007, Plaintiffs commenced this action in Supreme Court, Suffolk County, and Defendants removed the action to this Court on May 18, 2007. Essentially, Mr. Delehanty seeks to recover for his injuries and lost wages based on three theories: (1) design defect, (2) failure to warn, and (3) breach of implied warranty. His wife, Catherine Delehanty ("Mrs. Delehanty"), also a Plaintiff, was not personally injured by the ladder; she seeks to recover for loss of consortium and companionship. Both Defendants, represented by the same counsel, seek to bar Fein from being qualified as an expert and also seek summary judgment. For the reasons that follow, the Court GRANTS both of Defendants' motions.

DISCUSSION

I. Rule 56 Standard for Granting Summary Judgment

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing

---

the accident.

5

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. But while the moving party bears the initial burden, "once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.

II. <u>Rule 702 of the Federal Rules of Evidence</u>

Defendants seek to preclude Fein from testifying at trial pursuant to Rule 702 of the Federal Rules of Evidence, arguing that Fein is not qualified to render the opinions that (a) the housing Bolt is defective, and (b) there is a proximate cause between the

lack of stainless steel/cast aluminum bolts and Mr. Delehanty's fall. Furthermore, Fein's opinion that proximate cause exists between the claimed Bolt design defect and the ladder's slip-out is unreliable.

> Federal Rule of Evidence 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. District Courts are charged with the role of "the gatekeeper for expert testimony." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Thus, under Rule 702, district courts are required to first determine whether the proposed witness qualifies as an expert; if the witness is qualified, then the court must decide whether the scientific, technical, or other specialized testimony provided by that expert is both relevant and reliable. Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 352-53 (S.D.N.Y. 2003) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) and F.D.I.C. v. Suna Assocs., Inc., 80 F.3d 681, 686 ("It is well-established that expert testimony

must be based upon reliable theories or principles." (internal citations omitted))).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Id. at 353. Although the jury is tasked with deciding the weight given to expert testimony, a court should exclude expert testimony altogether if it is "speculative" or "conjectural" or if it is based on assumptions "so unrealistic and contradictory as to suggest bad faith . . . ." Sarto-Romero v. Delta Inti. Mach. Corp., No. 05-CV-5172, 2007 WL 2816191, at *5 (E.D.N.Y. Sept. 24, 2007) (citing Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)). In other words, where "there is simply too great an analytical gap between the data and the opinion proffered[,]" a district court may exclude the expert's testimony. General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (holding that courts need not admit opinion evidence "connected to existing data only by the ipse dixit of the expert"). In determining the reliability of the proffered testimony, the district court may consider a number of factors other than those outlined in Rule 702, including: (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether

a particular technique or theory has gained general acceptance in the relevant scientific community. See Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004) (citing Daubert, 509 U.S. at 593-94).

    A.    Fein's Qualifications

Fein is a self-proclaimed engineering consultant, with bachelors and masters degrees in mechanical engineering, and a master's degree in civil engineering. As of 2005, he spent "fifty percent of his time consulting for building owners and managers on safety issues; twenty-five percent of his time buying real property and developing that property for investment purposes; and twenty-five percent of his time engaged in forensic consulting, advising clients, and giving testimony regarding design safety for different products, such as tools, and in the building maintenance industry generally." Barban v. Rheem Textile Sys., Inc., No. 01-CV-8475, 2005 WL 387660, at *3 (E.D.N.Y. Feb. 11, 2005). Plaintiffs offer virtually no evidence that Fein is a qualified expert, except for the inclusion of his curriculum vitae as an attachment to their memorandum. Moreover, as Defendants put it:

> he has no expertise in either ladder design or ladder accident reconstruction. He has never designed any ladder, never worked for a manufacturer which designed a ladder and never participated in any Standards committee which addressed ladder safety (Fein, Paragraph 5). He has never tested ladders under any standard, including the ANSI Standard A14.5 which Fein agrees the ladder met and which addresses extension ladder resistance to

9

>             slip-out (Paragraph 10).  He has not done any
>             comparison testing of the accident ladder with
>             any other ladder.

(Defs' Mem. in Supp. 12.)  He has also never provided testimony, conducted studies, authored articles, or performed any other consulting work, specific to ladder design or accidents.

Perhaps most telling of Fein's qualifications, is Plaintiffs' own "endorsement" of Fein's expertise: "Contrary to the suggestion of defendants, Mr. Fein is not being called solely as a design expert (although he is <u>not unqualified</u> to offer opinions as to the proper designs of a component, such as a bolt, of an extension ladder)."  (Pls' Mem. in Opp'n 5 (emphasis added).)  In other words, Plaintiffs cannot in good faith assert that Fein is qualified to testify on matters of designs of extension ladder components, so they tell the Court that he is "not unqualified." Such an endorsement is far from persuasive and fails to establish Plaintiffs' burden.  Accordingly, the Court finds that Fein is not qualified to testify as an expert on ladder components or the proper warnings that should appear thereon.

B.  <u>Reliability of Fein's Testimony</u>

Although the Court's inquiry can cease after finding that Fein is unqualified as an expert, it feels compelled to also address the complete lack of reliability of the proffered testimony.  As an initial matter, the Court notes that Fein has changed his testimony several times.  Fein first stated that Mr.

10

Delehanty's ladder should have been designed with a galvanized-steel bolt to prevent its rusting. Interestingly, when confronted with the fact that the Bolt was already zinc-coated, Fein changed his opinion, arguing that the Bolt should be either aluminum or stainless steel. Early on, he also hypothesized that Mr. Delehanty's fall was caused by rust on the left foot housing, but later changed his theory, arguing that the right foot housing was the real culprit. What is more troubling than the inconsistency in Fein's opinion, however, is the basis on which he offers it. Fein did not examine the ladder until three months post-fall. In fact, he has no idea about the condition of the ladder in and around the time of the accident, and noted that the alleged culprit Bolt was unfrozen at the time of his inspection. (Fein Tr. 19.) Finally, he offers no research demonstrating that ladders with stainless steel housing bolts are safer, nor can he because no manufacturer in the United States manufactures a ladder with either stainless steel or cast aluminum bolts. In short, he offers nothing at all to establish the basis of his opinion. To quote <u>Barban</u>: "It was precisely that pretense of expertise, characterized as "junk science," at which <u>Daubert</u> was aimed." 2005 WL 387660, at *6.

III. <u>Absent Fein's Testimony, Plaintiffs' Claims Fail</u>

    A. <u>Plaintiffs Cannot Establish a Prima Facie Case for their Design Defect or Failure to Warn Claims</u>

These causes of action depend upon (1) the existence of a design defect in the ladder's right housing Bolt and (2) the

defect being a substantial cause of Mr. Delehanty's fall. Under the theory of design defect, a plaintiff must demonstrate that the product, as designed, is unreasonably dangerous for its intended use or that it "'presents an unreasonable risk of harm, notwithstanding that it was meticulously made according to detailed plans and specifications . . . .'" Fitzpatrick v. Currie, 52 A.D.3d 1089, 1090 (N.Y. App. Div. 2008) (quoting Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479 (1980)). To establish a prima facie case for design defect, Plaintiffs must show that the product was designed in such a way "'that it was not reasonably safe,'" id. (quoting Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107 (1983), such that "'if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.'" Id.[4]; see also Quintanilla v. Komori Am. Corp., No. 04-CV-5227, 2007 WL 1309539, at *8 (citing Voss v. Black & Decker

---

[4] "'This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes'" Fitzpatrick v. Currie, 2008 N.Y. Slip Op 5620, 2 (App. Div. 2008) (quoting Denny v. Ford Motor Co., 87 N.Y.2d 248, 257 (1995)).

12

Mfg. Co., 59 N.Y.2d 102, 107 (1983)).

Under the theory of failure to warn, a plaintiff must establish that the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm. Sorto-Romero v. Delta Intern. Mach. Corp., No. 05-CV-5172, 2007 WL 2816191, at * 10. To sufficiently plead a prima facie case, plaintiff must show that (1) a manufacturer had a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of the harm. Barban, 2005 WL 387660, at *9.

Based on the evidence offered by Plaintiffs, or rather the lack thereof absent Fein's precluded opinions, they cannot establish facts sufficient to establish either that the ladder was defectively designed, or that the design was the proximate cause of Mr. Delehanty's injury. Similarly, Plaintiffs offer no evidence that there was a reasonably foreseeable risk, let alone that Defendants' failure to warn users was the proximate cause of Mr. Delehanty's injury. All Plaintiffs have shown is that Mr. Delehanty was injured. Of course, this is regrettable; but absent further evidence, this is insufficient to establish Defendants' liability.

B. Plaintiffs' Implied Warranty Claim is Time-Barred

Under Section 2-725 of the New York Uniform Commercial Code ("UCC"), a plaintiff must bring its claim for breach of

13

warranty within four years after the cause of action accrued. Under New York law, a cause of action for breach of implied warranty accrues upon delivery of the product to the initial purchaser. See Solorio v. Asplundh Tree Expert Co., No. 02-CV-8035, 2009 WL 755362, at *5 (S.D.N.Y. Mar. 23, 2009) (citing Schrader v. Sunnyside Corp., 297 A.D.2d 369 (N.Y. App. Div. 2002)). Mr. Delehanty purchased the subject ladder more than four years before his fall. Thus, his cause of action for breach of warranty is barred by the statute of limitations.

### C. Mrs. Delehanty's Derivative Claim Fails

A claim for loss of consortium is derivative of the underlying claims. Thus, under New York law, Mrs. Delehanty's claim must also be dismissed because Mr. Delehanty's causes of action fail. See Macaluso v. Herman Miller, Inc., No. 01-CV-11496, 2005 WL 563169, at *9 (S.D.N.Y. Mar. 10, 2005) (citing Millington v. Southeastern Elevator Co., 239 N.E.2d 897, 902-03, 22 N.Y.2d 498, 293 N.Y.S.2d 305 (1968) ("Where, however, the husband's cause of action has been terminated either by judgment, settlement or otherwise, that should operate to bar the wife's cause of action for consortium")); Levine v. Sears Roebuck & Co., Inc., 200 F. Supp. 2d 180, 193 (E.D.N.Y. 2002).

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to preclude Fein from testifying as Plaintiffs' expert.

Additionally, the Court GRANTS summary judgment in favor of both Defendants. All of Plaintiffs' claims are DISMISSED, and the Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September   30  , 2009
         Central Islip, New York